UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

IN RE:                                  )
                                        )
SINGLETON FOOD SERVICES, INC. )    CHAPTER 11
                                        )    CASE NO. 18-22157-jrs
Debtor.                                 )


## EMERGENCY MOTION OF DEBTOR TO EXTEND AUTOMATIC STAY TO OWNER AND OFFICER OF DEBTOR

COMES NOW Debtor Singleton Food Services, Inc. ("Debtor") and files this Emergency Motion to Extend the Automatic Stay to J. Edward Singleton, Jr., Owner and Officer of Debtor.  In support of this Motion, Debtor shows the following:

1.

On November 3, 2018 (the "Petition Date") Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., (as amended, modified, or supplemented the "Bankruptcy Code"). In accordance with Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor operates its business as a Debtor-in-Possession.

2.

Debtor is a Georgia corporation that owns and operates twelve Subway franchises in North Georgia and North Carolina.  Debtor's only

1

income comes from its retail food operations.

3.

J. Edward ("Ed") Singleton, Jr. ("Ed Singleton" or "Mr. Singleton") is the owner of 100% of the stock of Debtor and serves as its President and Chairman.

4.

As of the Petition Date, Debtor and Ed Singleton were named defendants in a lawsuit filed in the United States District Court, Northern District of Georgia, captioned *Hope Thomas, on behalf of herself and others similarly situated, v. Singleton Food Services, Inc. d/b/a Subway and J. Edward Singleton, Jr.*, Civil Action No. 2:17-cv-00090-RWS (filed May 10, 2017) (the "Complaint"). The Complaint, attached hereto as Exhibit A, alleges that Debtor and Ed Singleton violated the Fair Labor Standards Act, 29 U.S.C. §201, et seq. ("FLSA"). The Complaint was filed as a class action lawsuit and as of the date of this Motion Debtor believes there are currently 170+/- potential members of the class action (hereafter "Claimants"). This number far exceeds the Debtor's current employees, numbering 110+/-.

5.

The allegations against Ed Singleton individually arise solely from his position as an owner and officer of the Debtor as Ed Singleton allegedly

2

comes within the broad statutory definition of "employer" under the FSLA. There are no independent allegations or causes of action against Ed Singleton in the Complaint. *See* Exhibit A.

6.

The undersigned counsel understands that since the Complaint was filed, a significant period of time was spent on mediation and other pre-trial matters and the discovery period only began in or about September 2018.

7.

The litigation was stayed against Debtor on the Petition Date pursuant to 11 U.S.C. §362(a).

8.

Although the allegations and causes of action asserted in the Complaint, in substance, were only directed toward the Debtor the Claimants have continued to aggressively pursue discovery against Ed Singleton individually.  Claimants appear to currently be pursuing sanctions in the District Court against Ed Singleton on an expedited basis.  *See* Exhibit B.

9.

In addition to the allegations and causes of action in the Complaint, the discovery served on Ed Singleton consists of interrogatories and

document requests that are, in their entirety, requests for information and documents from the Debtor. *See* Exhibits C (Interogatories) and D (Requests for the Production of Documents). Claimants admit that the discovery is directed toward Ed Singleton in his capacity as custodian of the Debtor's records. *See* Exhibit E. Effectively, therefore, the discovery is directed toward the Debtor.

10.

In this Chapter 11 case, Ed Singleton has been instrumental with the preparation of the case, schedules, information for the Initial Debtor Interview, the "First Day Motions," and all other matters. As the sole owner of the Debtor Ed Singleton is the final decision maker. The pending litigation is distracting Mr. Singleton from his duties and draining his physical resources in maintaining the required level of attention to the Debtor. The litigation will also drain the resources of the Debtor and its small office staff as, again, the discovery requests of the Claimants are directed solely toward the Debtor and information and documents maintained by the Debtor.

11.

The interests of the Debtor's estate will not be protected if the litigation continues and the Debtor will likely suffer immediate and irreparable harm and

4

damage. While Debtor operates a small profitable business, it cannot afford to have its staff and resources spend significant time on the litigation and discovery. In addition, it is unavoidable that the Debtor will incur additional administrative expenses as Debtor's counsel will necessarily be involved in discovery sought from the Debtor. Such a result would render the protections of the automatic stay meaningless.

12.

Although on its terms, Section 362(a) applies only to debtors, courts have held that a lawsuit against a non-debtor may be enjoined if that lawsuit threatens to disrupt a debtor's business and operations. See *In re Ionosphere Clubs, Inc.,* 111 B.R. 423,434 (Bankr. S.D.N. Y. 1990). In *Ionoshpere Clubs,* the court held that pursuit of certain lawsuits against officers of the debtor company would "surely involve, burden and directly impact" the debtor and thus adversely affect the debtor's estate. *Id.* This adverse impact was enough for the court to enjoin the lawsuits against the debtor's officers. *Id*. *See also TRS, Inc. v. Peterson Grain & Brokerage Co. (In re TRS, Inc.),*76 B.R. 805, 809 (Bankr. D. Kan. 1987) (court enjoined lawsuit against debtor's president given time and energy that would be taken from formulation of plan); *In re Stuart*, 2018 WL 6060324, *6 (fn. 16) (Bankr. N.D. Ga. Nov. 19, 2018 (Basier, J.).

5

In *In re Continental* Airlines, the court recognized that the defense of lawsuits by officers and directors heavily involved in the debtor's reorganization efforts and imposed burdens both on the directors and the debtor. This defense "substantially detracted" from the reorganization efforts and in turn hindered the debtor's ability to have a successful reorganization. This supported the court enjoining the prosecution of the lawsuits. *Gillman v. Continental Airlines, Inc. (In re Continental Airlines, Inc.),* 177 B.R. 475, 481 (D. Del. 1993).

The Fourth Circuit Court of Appeals, in extending the automatic stay, enunciated that the stay should "provide the debtor and its executives with a reasonable respite from protracted litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." *A.H Robins Co., Inc. v. Piccinin (In re A.H Robins Co., Inc.),* 788 F.2d 994, 996 (4th Cir. 1986). Judge Davis in the Southern District of Georgia followed the Fourth Circuit's reasoning in *In the Matter of Friedman's, Inc. v. Zale Corp. (In re Friedman 's, Inc.),* 336 B.R. 896 (Bankr. S.D. Ga. 2005).

In *Friedman's* Judge Davis enjoined Zale from prosecuting a state court action against the debtor's president because it would hinder the president's ability to serve the debtor effectively. *Id.* at 898. Judge Davis reiterated the Fourth Circuit's ruling that, under unusual circumstances, the

automatic stay can be extended to a non-debtor. *Id.* At 897. An unusual

circumstance is when the legal proceeding would "adversely affect the

debtor's estate where the issues were inextricably interwoven, where the

action threatened to disrupt the debtor's operations, where there were

common questions of law and fact, or where the action would diminish the

debtor's ability to formulate a plan." *Id. (citing and quoting In re Ionosphere*

*Clubs, Inc.,* 111 B.R. 423 (Bankr. S.D.N. Y. 1990)).

13.

In this case, the continuing litigation is adversely affecting Debtor's

ability to operate and reorganize. The litigation is altering the landscape of

Debtor's reorganization efforts as Mr. Singleton's time and energy are taken

away from his duties as the estate's administrator and as the chief executive

officer. As the chief executive officer, he will make the decisions regarding

this case. Mr. Singleton has many duties to fulfill as the owner of Debtor -

from operating the business in accordance with the Bankruptcy Code,

preparing the monthly operating reports, continuing the goodwill of Debtor

within its communities, and working with Debtor's professionals in

addressing issues within the case. If this litigation continues, it will

negatively impact the administration of this case as Mr. Singleton's attention

stays divided and company resources exhausted. Such negative impact also

will affect any distribution to creditors under a plan of reorganization as unresolved operational issues mount which may affect Debtor's cash flow.

Further, the Claimants and counsel acknowledge in the Complaint that their claims against Mr. Singleton and Debtor are intertwined. Claimants assert in their Complaints that Mr. Singleton *and* Debtor employed them, and that Mr. Singleton is not only the owner of Debtor, but also the agent of Debtor. The information sought from Mr. Singleton through discovery cannot be segregated from information about Debtor. Claimants have interwoven owner and company together such that continuing to pursue Mr. Singleton is effectively pursuing Debtor and Debtor's estate, which is a blatant violation of Section 362 of the Bankruptcy Code.

Moreover, the purpose of the automatic stay is to give a debtor "breathing room" necessary for a successful reorganization. "Breathing room - an opportunity to recoup its strength, evaluate its position and strike an accord with creditors" to achieve the primary goal of Chapter 11 which is "the financial resuscitation of an ailing business." *Transit Mix Concrete Corp. v. Ind. Cement Corp.,* 99 B.R. 210,215 (Bankr. S.D.N.Y. 1989). Claimants' conduct since Debtor filed this case has been an attempt to eviscerate the Bankruptcy Code protections that are intended to facilitate Debtor's emergence from bankruptcy with a fresh start. Pursuing Mr.

8

Singleton with such vigor and continuing to serve discovery that is, on its face, directed solely toward the Debtor ensures that Debtor will not have the necessary "breathing room" to successfully reorganize. The Claimants should, at least for some period of time, be prohibited from prosecuting the litigation against Mr. Singleton.

14.

Section 105(a) of the Bankruptcy Code confers broad equitable powers to this Court to implement and oversee Debtor's reorganization process. Indeed, this section authorizes the Court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The general phraseology provides the basis for the bankruptcy court's broad exercise of power in the administration of a bankruptcy case while taking action that is appropriate or necessary in the exercise of the court's jurisdiction. See *United States v. Energy Resources Co.,* 495 U.S. 545, 549-51 (1990) (noting that Section 105 confers broad power on the bankruptcy courts).  When this Court makes that inquiry in this case, the only possible answer is that the continued prosecution of the litigation against Mr. Singleton would significantly, and negatively, affect the administration of this Debtor's estate.

15.

Should the Court grant this Motion and extend the automatic stay to Mr. Singleton the Claimants will suffer little or no harm.  To the contrary, it will be much more efficient to all parties if the Claimants' claims are resolved in an orderly process rather than aggressive piecemeal litigation in two separate courts on two separate timelines.  Additionally, if the litigation is pursued against Mr. Singleton it is possible that he will be forced to file an individual Chapter 11 case. This would add additional harm to all parties, including the Claimants.  The resources of both the Debtor and Mr. Singleton will be depleted with additional and significant administrative expenses.  It is also important to note that a substantial portion of the Claimants' claims are for attorneys' fees and expenses rather than damages allegedly incurred by the individual Claimants.  If the Claimants are allowed to pursue claims in two courts (or two Bankruptcy cases), the administrative expenses and Claimants' attorneys' fees and expenses, to the extent allowed, will be the driving force of all cases to the detriment of ***all*** creditors (including Claimants).

16.

By this Motion, Debtors request that the Court enter an Order on an expedited basis, pursuant to §§ 105(a) of the Bankruptcy Code, extending

the automatic stay of §362(a) to Ed Singleton and to the litigation currently

pending in the District Court.


WHEREFORE, Debtor respectfully requests that the Court enter an

Order:

(A)    Granting Debtor's Motion and extending the protects of the

automatic stay to J. Edward Singleton, Jr. in the pending FLSA lawsuit; and

(B)    Granting such other relief the Court deems just and proper.


This 26th day of November 2018.


_____/S/_____
Scott B. Riddle, Esq.
GA Bar 604855
**Law Office of Scott B. Riddle, LLC**
Suite 1800
3340 Peachtree Road NE
Atlanta GA 30326
Telephone: (404) 815-0164
Facsimile: (404) 815-0165
scott@scottriddlelaw.com
***Counsel for Debtor***

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| HOPE THOMAS, *on behalf of herself and others similarly situated*, | CIVIL ACTION NO. |
| Plaintiffs, | 2:17-cv-00090-WCO |
| v. | JURY TRIAL DEMANDED |
| SINGLETON FOOD SERVICES, INC. d/b/a SUBWAY; and J. EDWARD SINGLETON, JR. | |
| Defendants. | |

## COMPLAINT

Named Plaintiff Hope Thomas ("Named Plaintiff Thomas"), by and through undersigned counsel, brings this action on behalf of herself and others similarly situated against Singleton Food Services, Inc., ("Singleton Foods") and J. Edward Singleton Jr., (collectively "Defendants") and states and alleges as follows:

### NATURE OF THE ACTION

1.     This is a collective action brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., ("FLSA"), alleging that Defendants failed to pay Named Plaintiff and others similarly situated at the federally-mandated minimum wage and overtime premium rate.

Exhibit A

## JURISDICTION AND VENUE

2.    The Court exercises jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because the claims raise questions of federal law.

3.    Venue is proper pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.4 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Gainesville Division of the Northern District of Georgia.

## PARTIES

4.    Defendant Singleton Foods is a Georgia corporation with its principle office located at 772 Maddox Dr., Suite 126, East Ellijay, Georgia 30540, according to the Georgia Secretary of State.

5.    Singleton Foods may be served with process through its registered agent, J. Edward Singleton, Jr., 772 Maddox Dr., Suite 126, East Ellijay, Georgia 30540.

6.    Defendant J. Edward Singleton Jr. is the Chief Economic Officer and owner of Defendant Singleton Foods.

7.    J. Edward Singleton may be served wherever he may be found.

8.    Named Plaintiff and others similarly situated have worked for Defendants as hourly employees within the three years preceding the filing of this action.

2

9.     Named Plaintiff consented in writing to join this action pursuant to 29 U.S.C. § 216(b). (*See* Exhibit 1.)

10.     Other similarly situated individuals are interested in joining this action.

11.     For example, opt-in Plaintiff Elain Chambers ("Opt-in Plaintiff Chambers"), Opt-in Plaintiff David Burmeister, Opt-in Plaintiff Maranda Burmeister, and Opt-in Plaintiff Heather Trillet filed consent forms to join this lawsuit. (*See* Exhibits 2, 3, 4, and 5.)

## FACTUAL ALLEGATIONS SHOWING THAT DEFENDANTS ARE JOINT EMPLOYERS

12.     Defendants are "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

13.     During the three years preceding the filing of this Complaint, Defendants employed Plaintiffs who engaged in interstate commerce or the production of goods for interstate commerce within the meaning of the FLSA.

14.     For example, Named Plaintiff Thomas uses Defendants' computer systems, processes credit card transactions, and sells and prepares food made from ingredients that traveled through interstate commerce.

15.     Defendant Singleton Foods is an enterprise whose annual gross sales or business done exceeds $500,000.

3

16.     During the three years preceding the filing of this Complaint, Singleton Foods employed one or more employees who handle goods that have traveled in interstate commerce within the meaning of the FLSA.

17.     Defendant Singleton Foods qualifies as an "employer" within the meaning of the FLSA.

18.     "Subway" is a trade name used by Defendants.

19.     Defendants Singleton Foods and J. Edward Singleton Jr. own and operate approximately 17 Subway sandwich restaurants located in Georgia and North Carolina.

20.     For example, Defendants own and operate the Subway sandwich restaurant located at 88 Highland Crossing, East Ellijay, Georgia 30540 (the "88 Highland Crossing Subway").

21.     Defendants also own and operate the Subway sandwich restaurant located at 500 Highland Crossing, East Ellijay, Georgia 30540 (the "500 Highland Crossing Subway").

22.     Defendants currently employ Named Plaintiff Thomas as an hourly employee at the 88 Highland Crossing Subway restaurant.

23.     Within the three years preceding the filing of this Complaint, Defendants also employed Named Plaintiff Thomas at the 500 Highland Crossing Subway restaurant.

24.     Defendants employed Opt-in Plaintiff David Burmeister as an hourly employee at the 88 Highland Crossing Subway restaurant.

25.     Defendants also employed Opt-in Plaintiff David Burmeister at the 500 Highland Crossing Subway restaurant.

26.     The Subway sandwich restaurants owned and operated by Defendants are an enterprise operated for the common business purpose of selling food to customers.

27.     Defendants' Subway sandwich restaurant enterprise is an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA.

28.     During the three years preceding the filing of this Complaint, Defendant J. Edward Singleton Jr. exercised operational control over Defendants' Subway sandwich restaurants in Georgia and North Carolina, including the 88 Highland Crossing Subway and the 500 Highland Crossing Subway.

29.     For example, Defendant J. Edward Singleton Jr. determined the compensation practices applicable to Defendants' employees at all of its Subway sandwich restaurants, including Plaintiffs.

30.     Defendant J. Edward Singleton Jr. had the authority to make changes to the compensation practices applicable to Defendants' employees at all of its Subway sandwich restaurants, including Plaintiffs.

31.     Defendant J. Edward Singleton Jr. had the authority to hire and fire employees of Defendants' Subway sandwich restaurants, including Plaintiffs.

32.     Defendant J. Edward Singleton Jr. determined the employment policies applicable to all employees of Defendants' Subway sandwich restaurants, including Plaintiffs.

33.     Defendant J. Edward Singleton Jr. maintained the employment records of the employees working at Defendants' Subway sandwich restaurants.

34.     Defendant J. Edward Singleton Jr. is an employer within the meaning of the FLSA.

35.     Defendant J. Edward Singleton Jr. employed Plaintiffs within the meaning of the FLSA.

36.     Plaintiffs are or were "employees" of Defendants within the meaning of the FLSA 29 U.S.C. § 203(e).

37.     Defendants J. Edward Singleton and Singleton Foods jointly employed Plaintiffs within the meaning of the FLSA.

## FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFFS' CLAIMS

38.     Defendants own and operate approximately 17 Subway sandwich restaurants located in Georgia and North Carolina.

39.     Named and Opt-in Plaintiffs are individuals who are, or have been, employed by Defendants as hourly employees at one or more of Defendants' Subway sandwich restaurants located in Georgia and North Carolina within the three years preceding the filing of this Complaint ("Hourly Employees").

40.     Hourly Employees' job duties consist of preparing and cooking food items; running the cash registers; taking orders from customers; and preparing the Subway sandwich restaurants for opening and closing, among other things.

41.     Defendants use a timekeeping system to track the hours worked by Hourly Employees.

42.     Defendants pay Hourly Employees an hourly wage for their hours worked.

43.     For example, Defendants pay Named Plaintiff Hope Thomas $8.00 per hour for certain hours worked.

44.     Defendants paid Opt-in Plaintiff David Burmeister $7.25 per hour for certain hours worked.

45.     However, Defendants subject the Hourly Employees at all of their Subway Sandwich restaurants to common illegal policies and practices that result in Hourly Employees receiving less than $7.25 for all hours worked.

46.     Defendants subject the Hourly Employees at all of their Subway Sandwich restaurants to common illegal policies and practices that result in Hourly Employees receiving less than 1.5 times their regular hourly rate for all hours worked over 40 in  a workweek.

47.     For example, Defendants subject all Hourly Employees to an illegal pay policy of only compensating Hourly Employees for the hours they are scheduled to work, as opposed to the hours actually worked by Hourly Employees.

48.     Hourly Employees typically work hours in excess of those they are scheduled to work.

49.     For example, Hourly Employees who are scheduled to open Defendants' stores are scheduled to arrive at Defendants' stores thirty minutes prior to opening to prepare the store for the days' operation by performing job duties such as baking bread and preparing the ingredient to be used in making sandwiches.

50.     However, it often takes Hourly Employees more than 30 minutes to prepare Defendants' stores for opening.

51.     Because it takes Hourly Employees more than 30 minutes to prepare Defendants' stores for opening, Hourly Employees arrive at Defendants' stores prior to the start of their scheduled shifts to begin preparing Defendants' stores for opening.

52.     Defendants know that Hourly Employees arrive prior to the start of their scheduled shift to begin preparing the stores for opening.

53.     However, Hourly Employees are not allowed to clock into Defendants' timekeeping system while performing these duties prior to the start of their scheduled shifts.

54.     Instead, Hourly Employees must wait until the start of their scheduled shifts to clock into Defendants' timekeeping system.

55.     Hourly Employees receive no wages for the hours worked prior to the start of their scheduled shift.

56.     By way of further example, Hourly Employees who are scheduled to close Defendants' stores are required to complete certain "side jobs" such as cleaning Defendants' store and preparing Defendants' store for the next day's customers before Hourly Employees are permitted to leave for the day.

9

57.     However, Defendants provide Hourly Employees a specified amount of time within which to complete their side jobs.

58.     It typically takes Hourly Employees longer than the time provided by Defendants to complete their side jobs.

59.     Defendants know that it typically takes Hourly Employees longer than the time provided by Defendants to complete their side jobs.

60.     However, Defendants do not pay Hourly Employees for any time spent performing their side jobs in addition to the time provided by Defendants.

61.     This practice results in Hourly Employees receiving no wages for certain hours worked.

62.     By way of further example, Hourly Employees are often required to work past the end of their scheduled shift due to customer demand.

63.     Defendants know that Hourly Employees often work past the end of their scheduled shifts.

64.     When Hourly Employees are required to work past the end of their scheduled shifts, Hourly Employees are only compensated for the hours they were scheduled to work.

65.    When Hourly Employees work past the end of their scheduled shifts, Hourly Employees receive no wages for the hours worked after their shift was scheduled to end.

66.    For example, on at least one occasion, Opt-In Plaintiff Chambers was required to work past the end of her scheduled shift because Ms. Chambers' store manager left the store and did not return until after Opt-in Plaintiff Chamber's shift had ended.

67.    Opt-in Plaintiff Chambers had no choice but to continue working past the end of her scheduled shift because she was the only employee at the store.

68.    However, Defendants removed the hours Opt-in Plaintiff Chambers worked past the end of her scheduled shift.

69.    Opt-in Plaintiff Chambers received no wages for the hours worked past the end of her scheduled shift.

70.    By way of final example of Defendants' illegal pay policy of only compensating Hourly Employees for the hours they are scheduled to work, in April 2017, Defendants put up a sign at the 88 Highland Crossing Store notifying Hourly Employees of Defendants' policy of only paying Hourly Employees for the hours they are scheduled to work.

71.     The sign instructs Hourly Employees to clock out of the timekeeping system when their shift is scheduled to end because they will only be paid for hours on the schedule.

72.     A true and correct copy of this sign is attached as Exhibit 6.

73.     The common illegal pay practice of not paying Hourly Employees for hours worked in addition to their scheduled hours is applicable to all Hourly Employees working at Defendants' stores, including crew members, store managers and assistant store managers.

74.     For example, Opt-in Plaintiff Heather Trillet worked for Defendants as a crew member, assistant store manager and store manager.

75.     Opt-in Plaintiff Trillet was paid an hourly wage for certain hours worked while employed as a crew member, store manager and assistant manager.

76.     Opt-in Plaintiff Trillet worked hours in excess of her scheduled hours as a crew member, assistant store manager and store manager.

77.     Opt-in Plaintiff Trillet was not paid for the hours she worked in addition to her scheduled hours as a crew member, store manager and assistant store manager.

78.     This common unlawful pay practice applicable to all Hourly Employees results in Hourly Employees receiving no wages for certain hours worked.

79.     Some of the hours worked by Hourly Employees that Defendants remove and for which Hourly Employees receive no wages are hours worked over 40 in a workweek.

80.     For example, as a store manager and assistant store manager, Opt-in Plaintiff Trillet worked between 50 and 60 hours per week.

81.     However, Opt-in Plaintiff Trillet was not compensated at 1.5 times her regular rate of pay for all hours worked over 40 in certain workweeks.

82.     Defendants' illegal policy of only compensating Hourly Employees for the hours they are scheduled to work results in Hourly Employees receiving less than 1.5 times their regular hourly rate for all hours worked over 40 in a workweek.

83.     Due to Defendant's policy of removing certain hours from Hourly Employees' time records, and not recording certain hours worked by Hourly Employees, Defendants violated the recordkeeping requirements of the FLSA.

## COUNT I: WILLFUL FAILURE TO COMPENSATE PLAINTIFFS AT THE REQUIRED MINIMUM WAGE

84.     Defendants pay Hourly Employees, including Plaintiffs, an hourly wage for certain hours worked.

85.     However, Defendants fail to compensate Hourly Employees for all hours worked at the required minimum wage of $7.25 per hour.

86.    Defendants remove hours from Hourly Employees' time records such that Hourly Employees do not receive at least $7.25 per hour for all hours worked.

87.    Defendants require Hourly Employees to perform work – such as preparing the stores for opening and closing – while off the clock and pay Hourly Employees no wages for certain hours worked.

88.    Defendants knew or should have known that Plaintiffs worked hours for which they received no wages.

89.    By failing to compensate Hourly Employees at the required federal minimum wage, Defendants violated, and continue to violate, Hourly Employees' rights under the FLSA.

90.    Defendants' violation of the FLSA's minimum wage provision is willful.

91.    Defendants violated, and continue to violate, the FLSA with reckless disregard for their obligations under the FLSA.

92.    Pursuant to 29 U.S.C. §216(b), Defendants are liable to Hourly Employees for all unpaid wages at a rate not less than $7.25 per hour, liquidated damages in an amount equal to their unpaid wages, attorney fees and costs.

## COUNT II: WILLFUL FAILURE TO PAY HOURLY EMPLOYEES AT THE REQUIRED OVERTIME PREMIUM RATE

93.    Hourly Employees work hours in excess of 40 during certain workweeks.

94.    However, Defendants fail to compensate Hourly Employees for all hours worked, including those over 40 per workweek.

95.    Defendants fail to compensate Hourly Employees at not less than 1.5 times their regular rate of pay for all hours worked over 40 in a workweek.

96.    Defendants knew or should have known that Hourly Employees worked hours in excess of 40 per workweek for which they were not compensated at 1.5 times their regular rate of pay.

97.    Defendants' violation of the FLSA demonstrates a reckless disregard for Hourly Employees' right under federal law.

98.    Defendants' violation of the FLSA's overtime provisions is willful.

99.    Pursuant to 29 U.S.C. § 216(b), Defendants are liable to Hourly Employees for unpaid overtime wages, liquidated damages, attorney fees and costs.

### DEMAND FOR JUDGMENT

Plaintiffs respectfully requests that the Court:

(a)    Declare that Defendants' actions, policies, and practices complained of herein violate the rights of Plaintiffs as secured by federal law;

(b)     Enter judgment against Defendants that their violations of the FLSA were

        willful;

(c)     Award all unpaid wages;

(d)     Award liquidated damages in an amount equal to Plaintiffs' unpaid

        wages;

(e)     Award reasonable attorney fees, costs, and expenses; and

(f)     All other relief to which Plaintiffs may be entitled.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury.

Respectfully submitted: 5/10/2017


POOLE HUFFMAN LLC                              *s/Dustin L. Crawford*
315 W. Ponce de Leon Ave.                      Dustin L. Crawford
Suite 344                                      Georgia Bar No. 758916
Decatur, Georgia 30030                         John L. Mays
Telephone:   (404) 855-3002                    Georgia Bar No. 986574
Facsimile:    (404) 855-4066
dustin@poolehuffman.com                        Counsel for Plaintiffs
john@poolehuffman.com

From:      Dustin Crawford <dustin@poolehuffman.com>
To:        "Stacey_Kemp@gand.uscourts.gov" <Stacey_Kemp@gand.uscourts.gov>
Cc:        Dan Kniffen <KniffenD@deflaw.com>, Meredith Riggs Guerrero <mguerrero@deflaw.com>, John Mays
<john@poolehuffman.com>
Date:      11/19/2018 08:00 PM
Subject:   Thomas et al v. Singleton Food Services at al - Request for the Court's Intervention in a Discovery Dispute

Dear Ms. Kemp:

The Plaintiffs in the above-referenced matter seek relief from the Court with respect to a discovery dispute between
the Parties. Plaintiffs served Defendants with Requests for Production of Documents and Interrogatories on October
5, 2018 via email and again on October 11, 2018 via U.S. mail. The time for Defendants to respond has passed, and
Defendants have not responded to Plaintiffs' discovery requests. While Defendant Singleton Food Services, Inc.,
filed for Chapter 11 Bankruptcy on  November 3, 2018, thus staying the litigation against that Defendant, Defendant
J. Edward Singleton Jr. has not filed for bankruptcy, nor has the automatic stay applicable to Defendant Singleton

Exhibit B

Foods Inc been extended to Defendant Edward Singleton. Thus, Defendant Ed Singleton must respond to Plaintiffs' discovery requests within the time provided by the Federal Rules. Mr. Singleton failed to do so.

On November 16, 2018, I requested to meet and confer with Defense counsel regarding Defendant Ed Singleton's failure to respond to Plaintiffs' discovery requests. Defense counsel informed me that Mr. Singleton does not intend to respond to Plaintiffs' requests. The Parties thus have a discovery dispute with respect to which Plaintiffs request the Court's intervention.

Please let the Parties know how the Court would like us to proceed.

Kind regards,

Dustin Crawford (counsel to Plaintiffs)



**Dustin L. Crawford**
**Attorney at Law**
Direct: 404-855-3002 | Fax: 888-709-5723
3562 Habersham at Northlake, Bldg. J, Ste 200, Tucker, Ga 30084
dustin@poolehuffman.com  |  poolehuffman.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| HOPE THOMAS, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO: 2:17-cv-00090-RWS |
| SINGLETON FOOD SERVICES, INC. d/b/a SUBWAY and J. EDWARD SINGLETON, JR., | ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' FIRST INTERROGATORIES TO DEFENDANTS

Plaintiffs propound the following interrogatories to be answered by Defendants Singleton Food Services, Inc., and J. Edward Singleton, Jr. ("Defendants") pursuant to Fed. R. Civ. P. 26 and 33.

### INSTRUCTIONS & DEFINITIONS

A. *Relevant period*. The relevant period is the period of time beginning three years prior to the filing of the Complaint and continuing to the present and shall be the applicable time period unless otherwise stated.

B. *Concerning*. The term "concerning" means referring to, describing, evidencing, containing, reflecting, or constituting.

1

Exhibit C

C.  *Document*. The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the terms "documents" and "electronically stored information" as used in Fed. R. Civ. P. 34(a).

D.  *Identify* (Documents). When referring to documents, to "identify" means to give, to the extent known: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was sent; or, alternatively, to produce the document.

E.  *Identify* (Entities). When referring to entities, to "identify" means to give the entity's: (i) full name; (ii) last known address of the principal place of business of the organization to be identified; (iii) and relationship, if any, to Plaintiffs or Defendants.

F.  *Identify* (Persons). When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) last known address, email address and phone number; (iii) last known place of employment; (iv) last known job title; and (v) relationship, if any, to Plaintiffs or Defendants.

G.  *Person*. The term "Person" means a natural individual, corporation, partnership, or other business association or entity, or any government or governmental public body, commission, board, agency, authority, or district.

2

H.     *Electronically stored information (ESI).* "ESI" means information created, manipulated, communicated, stored, maintained, or utilized in digital form. *Plaintiffs.* "Plaintiffs" means Named Plaintiff Thomas and all Opt-in Plaintiffs who filed consent forms to join this case, unless otherwise specified.

I.     Whenever a date, amount, computation or figure is requested, please provide the exact date, amount, computation or figure unless it is unknown. If it is unknown, provide the approximate or best estimate, and state that such response is an approximation or estimation.

J.     If you believe that an interrogatory is confusing, vague, or ambiguous, please contact me by phone or email as soon as possible for clarification—rather than waiting until the responses are due to object—to avoid discovery disputes and delays based on curable defects.

## INTERROGATORIES

1.     INDIVIDUAL(S) RESPONDING. Identify the person(s) verifying the answers to these interrogatories, along with all persons who supplied information or assistance in the preparation of said answers.

2.     SOURCES OF ESI. Identify and describe the email systems, messaging systems, document management systems, storage devices, servers, telephone and voicemail systems (including mobile devices and VoIP systems), and databases that

were used in the ordinary course of Defendants' business during the relevant period by Defendants and its managers (including, but not limited to, General Managers, Assistant General Managers, Secretaries, Store Managers) and state whether archives or back-up copies of the electronically-stored information contained in those sources is maintained by Defendants. If Defendants maintain archives or back-up copies of such ESI, please describe the systems used to archive or back-up data in the ordinary course of business.

3.    RECORDS RETENTION. Describe your electronic records retention policy governing the storage and destruction of electronically stored information (ESI), including in your answer (1) which types of ESI are retained, (2) how and where the retained information is backed up and stored, (3) and specific intervals for retention.

4.    TIME RECORDS AND TIMEKEEPING DATABASES. Identify the timekeeping system where Plaintiffs' time records were maintained and the individuals who have access to the timekeeping system and describe any electronic databases that you utilized during the relevant period to track the hours worked by Plaintiffs. Please explain how you used each database, and please identify each database's platform (Oracle, SQL, Salesforce, etc.).

4

5.    SCHEDULED HOURS. Identify the person(s) responsible for determining the number of hours Plaintiffs were scheduled to work each week during the relevant period.

6.    HOURS PAID. Identify the person(s) responsible for determining the number of hours for which Plaintiffs were paid each week during the relevant period.

7.    PLAINTIFFS' EMPLOYERS. Identify the person(s) responsible for determining the hours of operation of each location where each Plaintiff worked; the number of employees employed at each location where Plaintiffs worked; and the rates of pay received by Plaintiffs at each location. With respect to each person identified, describe that person's position in Defendants' business.

8.    PLAINTIFFS' EMPLOYMENT LOCATIONS. Identify the location(s) by store number and address where each Plaintiff worked during the relevant period; the position or positions held by each Plaintiff at each location; and the dates that Plaintiffs held such positions at each location.

9.    HOURS WORKED. Identify the dates and locations of any meetings (whether in person, via telephone, or videoconference) attended by Defendant J. Edward Singleton, Jr., and any members of Defendants' management team, including, but not limited to, Melissa Gravitte or Tori Vincent, at which: (1) the hours Plaintiffs were permitted to work, required to work, suggested to work,

5

prohibited from working, required to record, or prohibited from recording were discussed; or (2) the wages Plaintiffs were required to receive, permitted to receive, or prohibited from receiving were discussed during the relevant period.

10.    INVESTIGATIONS. State whether Defendants, or any individual acting on Defendant's behalf, have obtained statements in any form from any person concerning the allegations contained in Plaintiff's First Amended Complaint (ECF No. 3) or Defendant's Answer (ECF No. 14) and, with respect to each statement identified, (a) identify the persons giving statements, and state (b) the dates upon which the statements were taken, (c) the identity of the person taking the statements, and (d) whether such statements were written, oral, or recorded.

11.    PLAINTIFFS' EMPLOYER. Describe in detail the corporate structure of Defendant Singleton Food Services, Inc., and identify: (a) all officers, directors, managers, secretaries, shareholders, board members, and owners; and (b) all human resources personnel, during the relevant period.

12.    PLAINTIFFS' EMPLOYER. Identify the person(s) responsible for, or who were consulted with respect to, hiring Plaintiffs, firing Plaintiffs, or setting or modifying Plaintiffs' rates of pay, and describe the role of each person identified.

13.    PLAINTIFFS' EMPLOYER. Identify the person(s) responsible for establishing, modifying, and/or enforcing the employment policies applicable to

6

Plaintiffs, and, with respect to each person identified, describe that person's relationship to Singleton Food Services, Inc.

Dated:        October 5, 2018.

/s/ Dustin L. Crawford

| | |
|---|---|
| Poole Huffman, LLC | Dustin L. Crawford |
| 3562 Habersham at Northlake | Georgia Bar No. 758916 |
| Tucker, Georgia 30084 | John L. Mays |
| T: (404) 373 – 4008 (Ext. 101) | Georgia Bar No. 986574 |
| F: (877) 813 – 1845 | |
| dustin@poolehuffman.com | Counsel for the Plaintiff |
| john@poolehuffman.com | |

7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| HOPE THOMAS, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO: 2:17-cv-00090-RWS |
| SINGLETON FOOD SERVICES, INC. d/b/a SUBWAY and J. EDWARD SINGLETON, JR., | ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFFS' FIRST REQUEST FOR PRODUCTION
OF DOCUMENTS TO DEFENDANTS**

Pursuant to Fed. R. Civ. P. 26 and 34, Plaintiffs request that Defendants Singleton Food Services, Inc and J. Edward Singleton, Jr. ("Defendants") produce the documents designated below for inspection and copying at the offices of POOLE HUFFMAN LLC, 3562 Habersham at Northlake, Building J, Suite 200, Tucker, Georgia 30084.

**INSTRUCTIONS & DEFINITIONS**

A.    *Rule 26 Requirements*. These requests are subject to Fed. R. Civ. P. 26(b)(5) regarding assertions of privilege, Fed. R. Civ. P. 26(e) regarding supplementation, and Fed. R. Civ. P. 26(g) regarding certification of responses.

Exhibit D

B.    *Rule 34 Requirements.* These requests are subject to Fed. R. Civ. P. 34(b)(2) regarding answers and objections. Please note that you "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). Supplementation by organization will be requested for any responsive documents produced in a manner that does not comply with Rule 34(b)(2)(E)(i).

C.    *Partial Responses.* If a partial or incomplete answer or production is provided, you must state the reason that the answer or production is partial or incomplete.

D.    *Concerning.* The term "concerning" means referring to, referencing, describing, evidencing, reflecting, relating to, containing, or constituting.

E.    *Plaintiffs* means the Named Plaintiff and all Opt-in Plaintiffs unless otherwise specified.

F.    *Defendants* or *you.* The terms "Defendants" and "you" mean the named Defendants in this lawsuit.

G.    *Document.* The terms "document" and "documents" are defined to be synonymous in meaning and equal in scope to the terms "documents" and "electronically stored information" as used in Fed. Civ. P. 34(a).

H.   *Form of production for documents that exist in electronic form*. Any documents that exist in electronic form are specifically requested to be produced in native or near-native formats, pursuant to Rule 34(b)(1)(C) of the Federal Rules of Civil Procedure and should not be converted to an imaged format (e.g. .TIFF or .PDF) unless such document must be redacted to remove privileged content or the document does not exist within your care, custody or control in a native electronic format. Native format requires production in the same format in which the information was customarily created, used, and stored by you. The table below supplies examples of the native or near-native forms in which specific types of electronically stored information (ESI) should be produced:

| SOURCE ESI | NATIVE (OR NEAR-NATIVE) FORM(S) SOUGHT |
|---|---|
| Microsoft Word documents | .DOC, .DOCX |
| Microsoft Excel Spreadsheets | .XLS, .XLSX |
| Microsoft PowerPoint Presentations | .PPT, .PPTX |
| Microsoft Access Databases | .MDB |
| WordPerfect documents | .WPD |

| | |
|---|---|
| Adobe Acrobat Documents | .PDF |
| Photographs | .JPG |
| E-mail | Messages should be produced to preserve and supply the source RFC 2822 content of the communication and attachments in a fielded, electronically searchable format. For Microsoft Exchange or Outlook messaging, .PST format will suffice. Single message production formats like .MSG or .EML may be furnished, if source folder data is preserved and produced. If your workflow requires that attachments be extracted and produced separately from transmitting messages, attachments should be produced in their native forms with parent/child relationships to the message and container(s) preserved and produced. |
| Databases (excluding e-mail systems) | Unless the entire contents of a database are responsive, extract responsive content to a fielded and electronically searchable format preserving metadata values, keys, and field relationships. If doing so is not feasible, please identify the database and supply information concerning the schemas and query language of the database, along with a detailed description of its export capabilities, to enable Plaintiffs to develop a query sufficient to identify, extract, and export responsive data. |

I.    *Form of production for documents that do not exist in electronic form.*

Documents that do not exist in a native electronic format or which require redaction

of privileged content are requested to be produced in searchable portable document format (.PDF) with logical unitization preserved.

J.    *Medium of production.* Productions smaller than 32GB should be made using a flash/thumb drive. Productions larger than 32GB should be made using a portable external hard drive.

K.    *Relevant period.* The relevant period is the period of time beginning three years from the date the Complaint was filed and continuing to the present and shall be the applicable time period applicable unless otherwise stated.

L.    *Avoidance of disputes and delays.* If you believe that a request is confusing, vague, or ambiguous, please apply a reasonable construction to the request and respond accordingly. You may specify your construction of the request in the written portion of your response. Alternatively, you may contact counsel for clarification prior to serving your response.

## REQUESTS

1.    PLAINTIFFS' JOB DUTIES. Produce any written descriptions of the job duties of Plaintiffs during the relevant period, including all revisions and drafts to such job descriptions.

2.    PLAINTIFFS' JOB DUTIES. Produce all documents concerning the training of any Plaintiff in the performance of his or her job duties, whether live, by computer, or other means.

3.    EMPLOYMENT POLICIES. Produce all documents, including internal communications, memoranda, and employee handbooks (including drafts and revisions thereto), concerning the employment policies applicable to Plaintiffs during the relevant period. This request includes all documents concerning the number of hours Plaintiffs were scheduled, instructed, prohibited from, or permitted to work during any workweek during the relevant period.

4.    EMPLOYMENT POLICIES. Produce all documents concerning the supervision of Plaintiffs during the relevant period, including Defendants' supervisory structure and levels of supervision; the day-to-day supervision of Plaintiffs; and the polices, practices, and procedures for any training of Plaintiffs, General Managers, Assistant General Managers, Store Managers, or Assistant Store Managers.

5.    EMPLOYMENT POLICIES. Produce all documents concerning any measures Defendants used during the relevant period to ensure the quality, efficiency, consistency, or reliability of the work performed by Plaintiffs, including

any disciplinary policies, and all documents concerning the enforcement of those policies with respect to Plaintiffs.

6.    EVIDENCE OF HOURS WORKED BY PLAINTIFFS. Produce Plaintiffs' schedules during the relevant period, including all revisions or modifications made thereto.

7.    EVIDENCE OF HOURS WORKED BY PLAINTIFFS. Produce all video surveillance recordings from all stores where any Plaintiff worked during the relevant period.

8.    EVIDENCE OF HOURS WORKED BY PLAINTIFFS. Produce all communications including, but not limited to, emails and texts messages concerning the hours worked or recorded by Plaintiffs. This request includes all communications concerning the removal of, or modification to, hours recorded by Plaintiffs in Defendants' timekeeping system.

9.    EVIDENCE OF HOURS WORKED BY PLAINTIFFS. Produce all documents, including internal memoranda and communications (e.g., emails, text messages, etc.), concerning the amount of time required, recommended, suggested, or permitted to perform a given task, assignment, duty, or function performed by the Plaintiffs (including, but not limited to, opening and closing Defendants' stores) during the relevant period.

10.    EVIDENCE OF HOURS WORKED BY PLAINTIFFS. Produce all documents, including internal communications (emails, texts messages, etc.) or memoranda, between or among Defendant J. Edward Singleton, Jr., and Defendants' managers, supervisors, secretaries, or office managers (including, but not limited to, Melissa Gravitte and Tori Vincent) concerning the minimum, maximum, recommended, suggested, permitted, or required number of employees who should, must, or will work on a particular assignment (including opening and closing Defendants' stores), on a particular day, during a particular week, or at a particular location.

11.    EVIDENCE OF HOURS WORKED BY PLAINTIFFS. Produce all documents, communications (emails, texts messages, etc.), and memoranda concerning the number of hours that Plaintiffs: (1) were required to work, permitted to work, requested to work, scheduled to work, or prohibited from working; (2) were required to record, permitted to record, or prohibited from recording in Defendants' timekeeping system; or (3) the amount of wages Plaintiffs were permitted to receive, required to receive, recommended to receive, or prohibited from receiving.

12.    EVIDENCE OF HOURS WORKED BY PLAINTIFFS. Produce all communications (emails, texts messages, etc.) between Defendant J. Edward Singleton, Jr. and Defendants' managerial team (including, but not limited to,

Supervisors, General Managers, Assistant General Managers, Store Managers, Regional Managers, Secretaries, Office Managers) concerning the number of hours that Plaintiffs: (1) were required to work, permitted to work, requested to work, scheduled to work, or prohibited from working; (2) were required to record, permitted to record, or prohibited from recording in Defendants' timekeeping system; or (3) the amount of wages Plaintiffs were permitted to receive, required to receive, recommended to receive, or prohibited from receiving.

13.    TIME RECORDS. Produce all documents concerning the hours Plaintiffs worked during the relevant period.

14.    MODIFICATION TO PLAINTIFFS' TIME RECORDS. Produce all documents concerning modifications to Plaintiffs' time records, including audit trails and change history reports.

15.    COMPENSATION AND BENEFITS. Produce all documents, including paystubs, check stubs, and tax reporting forms, concerning the compensation or benefits of employment that Plaintiffs received during the relevant period.

16.    RECORD KEEPING POLICIES. Produce all documents, including internal communications and memoranda, concerning Defendants' policies and

procedures for tracking and maintaining the hours worked by Plaintiffs and the compensation received by Plaintiffs.

17. LOCATIONS WHERE PLAINTIFFS WORKED. Produce all documents concerning the location where each Plaintiff worked, the dates of each Plaintiffs' employment at each location, the title or titles the Plaintiff held at each location, and the Plaintiffs' hourly rate while working at each location and in each job classification.

18. PLAINTIFFS' EMPLOYER. Produce all organizational charts or documents concerning the corporate organizational and ownership structure of Defendant Singleton Food Services, Inc., including its corporate headquarters, divisions, units, sites, offices, and locations.

19. PLAINTIFFS' EMPLOYER. Produce all documents concerning the monitoring of Plaintiffs' work, tasks, performance, or productivity, and the individuals responsible for monitoring Plaintiffs' work.

20. PLAINTIFFS' EMPLOYER. Produce all documents showing the current and past contact information for all individuals who supervised or managed Plaintiffs' during the relevant period.

21. COMPLIANCE EFFORTS. Produce all documents concerning any audits, investigations, inquiries, or studies by Defendants, or any third party during

or before the relevant period relating to Defendants' compliance or non-compliance with any state or federal wage and hour laws.

22.    COMPLIANCE EFFORTS. Produce all documents, including internal communications and memoranda, concerning any complaints, grievances, instructions, questions, or expressions of concern, whether formal or informal, by any of Defendants' employees or franchisors regarding the number of hours worked by Plaintiffs, the recording or removal of Plaintiffs' hours in or from Defendants' timekeeping system, or wages paid to Plaintiffs.

23.    DEFENDANTS' FOURTH DEFENSE. Pursuant to the Fourth Defense asserted in your Answer, produce all documents concerning the "substantial efforts to [comply] with the FLSA" that you took, and the advice of counsel and the written Department of Labor guidance upon which you relied in arriving at your alleged good-faith belief that the pay practices applicable to Plaintiffs complied with the FLSA.

24.    DEFENDANTS' FIFTEENTH DEFENSE. Pursuant to the Fifteenth Defense asserted in your Answer, produce all documents you contend support your defense that "if Defendants failed to properly pay Plaintiffs or any individuals alleged to be similarly situated for activities in excess of 40 hours per week, such

activities are not an integral and indispensable part of their principle activities of employment and do not constitute compensable work."

25.   **DEFENDANTS' EIGHTEENTH DEFENSE.** Pursuant to the Eighteenth Defense asserted in your Answer, produce all documents you contend support your allegation that "Defendants did not willfully, knowingly, or intentionally fail to comply with the FLSA."

26.   **STATEMENTS.** Produce all written, recorded, or transcribed statements obtained by Defendants, or on Defendant's behalf, concerning this lawsuit.

Dated: October 5, 2018

Poole Huffman, LLC
3562 Habersham at Northlake
Tucker, Georgia 30084
Phone: 404-373-4008 (ext. 101)
dustin@poolehuffman.com
john@poolehuffman.com

*/s/ Dustin L. Crawford*

Dustin L. Crawford
Georgia Bar No. 758916
John L. Mays
Georgia Bar No. 986574

Counsel for the Plaintiffs

**From:** Dustin Crawford [mailto:dustin@poolehuffman.com]
**Sent:** Monday, November 19, 2018 4:02 PM
**To:** Meredith Riggs Guerrero; Dan Kniffen
**Cc:** John Mays; Linda Hewlett
**Subject:** RE: Thomas et al v Singleton Food Services at al - Request to Confer regarding a Discovery Dispute

I don't understand how the bankruptcy filing of Singleton Foods prevents Mr. Singleton (a separate and distinct legal entity) from responding to discovery requests. He is a named Defendant in this lawsuit, individually liable for Plaintiffs' unpaid wages. If the documents requested are in his possession, custody, or control, he should produce them. If he knows the answer to an interrogatory, he should answer it. Singleton Foods' bankruptcy filing does not prevent Mr. Singleton from participating in this lawsuit, and the automatic stay applicable to Singleton Foods does not apply to Mr. Singleton.

In any event, it appears we have a discovery dispute. I will notify the Court that we need a conference.

Best,
Dustin

**From:** Dustin Crawford [mailto:dustin@poolehuffman.com]
**Sent:** Friday, November 16, 2018 1:26 PM
**To:** Dan Kniffen; Meredith Riggs Guerrero
**Cc:** John Mays
**Subject:** Thomas et al v Singleton Food Services at al - Request to Confer regarding a Discovery Dispute

Dan and Meredith:

I'm writing in regards to Defendant J. Edward Singleton's failure to serve Initial Disclosures and his failure to respond to Plaintiffs' First Request for Production of Documents and Plaintiffs' First Interrogatories. Please consider this email an attempt to confer in good faith pursuant to Federal Rule 37(a)(1).

Mr. Singleton's Initial Disclosures were due the first day of discovery, but have not been produced. On October 5, 2018, Plaintiffs served Mr. Singleton with requests for production of documents and interrogatories that were due on November 4, 2018. Since I did not hear from you regarding whether you were willing to accept email service of discovery requests, I also served Mr. Singleton with Plaintiffs' discovery requests via U.S. mail on October 11, 2018. Thus, even if you refuse to accept email service of discovery requests, the latest date for Mr. Singleton to respond to Plaintiffs' discovery requests was November 12, 2018. Mr. Singleton has not responded to Plaintiffs' interrogatories or Plaintiffs' request for production. While I understand that the Chapter 11 bankruptcy petition filed by Defendant Singleton Food Services, Inc., results in an automatic stay of the litigation against Singleton Foods, the bankruptcy stay does not apply to Mr. Singleton. *See, e.g., DeWitt v. Daley*, 336 B.R. 552 (S.D. Fla. 2006). As the information Plaintiffs requested is within Mr. Singleton's possession, custody or control, I'm confused by why Mr. Singleton refused to respond to Plaintiffs' discovery requests. Because Mr. Singleton failed to respond to Plaintiffs' discovery requests by the deadline provided by the Federal Rules, all objections to Plaintiffs' discovery requests have been waived. *See* Fed. R. Civ. P. 33(b)(4); *see also Pirelli Tire LLC v. Cronrath*, No. 4:12-cv-0068, 2013 WL 12291717 at * 2 (N.D. Ga. Sept. 20, 2013).

Due to Mr. Singleton's failure to respond, we have a discovery dispute about which we need to meet and confer. If you refuse to meet and confer and attempt to resolve this dispute, I will have no choice but to notify the Court's Deputy Clerk and request a conference with the judge to resolve this issue.

To be clear, this email is not intended to grant Mr. Singleton an extension of time to respond to Plaintiffs' discovery requests. Mr. Singleton has had sufficient time to respond to Plaintiffs' discovery requests, but failed to do so. You've also provided me with no reason for Mr. Singleton's failure to respond. In your email to me dated November 8, 2018, you recognized that the bankruptcy stay does not apply to Mr. Singleton, so there is no excuse for Mr. Singleton's failure to respond within the time provided by the Federal Rules. As all objections to Plaintiffs' discovery requests have been waived, the only issue that we need to discuss is: how does Mr. Singleton intend to remedy his failure to respond to Plaintiffs' discovery requests?

I am available to meet and confer regarding this discovery dispute next Monday, Tuesday, or Wednesday. Please let me know by 5:00 p.m. today when you're available for a conference.

Thank you,
Dustin



**Dustin L. Crawford**
**Attorney at Law**

Phone: 404-373-4008 (ext. 101) | Fax: 888-709-5723
3562 Habersham at Northlake, Bldg. J, Ste 200, Tucker, Ga 30084
dustin@poolehuffman.com  |  poolehuffman.com

## CERTIFICATE OF SERVICE

This is to certify that I have caused this day to be served a true and correct copy of the foregoing Motion by depositing same in United States Mail in a properly addressed envelope with adequate postage thereon to the Master Services List attached hereto and by electronic mail to the following:

Office of the U. S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30303
david.s.weidenbaum@usdoj.gov


Poole Huffman LLC
315 W. Ponce de Leon Ave.
Ste 344
Decatur, GA 30030
scott@poolehuffman.com


This 26th day of November 2018.


_____/S/_____
Scott B. Riddle, Esq

12

Office of the United States Trustee
Attn: David S. Weidenbaum, Esq.
75 Ted Turner Drive, S.W., Room 362
Atlanta, GA 30303

Singleton Food Services, Inc.
772 Maddox Drive, Ste 136
Ellijay, GA 30540

United Community Bank
558 Industrial Blvd.
Ellijay, GA 30540

Soaring Eagle Cherokee Invest.
1175 Hornage Rd
Ball Ground, GA 30107

Internal Revenue Service
Centralized Insolvency Op.
PO Box 7346
Philadelphia, PA 19101-7346

Georgia Department of Revenue
ARCS Bankruptcy
1800 Century Blvd, Ste 9100
Atlanta, GA 30345-3202

American Express
PO Box 650448
Dallas, TX 75265-0440

Audi Financial Services
PO Box 5215
Carol Stream, IL 60197

BMW Bank of North America
P.O. Box 78066
Phoenix, AZ 85062-8066

Blue Ridge Mountain EMC
PO Box 9
Young Harris, GA 30582-0009

City of Canton Utilities
PO Box 4848
Kennesaw, GA 30144-0026

Cliff Bradshaw, Jr.
2581 Upper Bell Rd.
Hiawassee, GA 30546

Drew Eckl & Farnham LLP
303 Peachtree St NE
Ste 3500
Atlanta, GA 30308-3263

First National Bank of Omaha
PO Box 2818
Omaha, NE 68103-2818

Georgia Power
96 Annex
Atlanta, GA 30396-0001

Icee Company
PO Box 515723
Los Angeles, CA 90051-5203

NuCO2
PO Box 417902
Boston, MA 02241-7902

PFG Miltons
3501 Old Oakwood Rd
Oakwood, GA 30566

Think Utility Services Inc.
PO Box 17389
Clearwater, FL 33762-0389

Tri State Hearing & Air
PO Box 1295
Blue Ridge, GA 30513

Classic Wash
106A Travelers Rest Road
Jasper GA 30143

Cliff Bradshaw Jr.
2581 Upper Bell Rd
Hiawassee GA 30546

Marjette McDonnell
2300 Dellwood Drive NW
Atlanta GA 30305

Mountain Stream Center, LLC
PO Box 148
Hayesville NC 28904

Piazza Enterprises
21 SW Palm Cove Dr
Palm City FL 34990

Quinn Group
5855 Jimmy Carter Blvd.
Ste 210
Norcross GA 30071

Raining K's, LLC
446 Kelhorn Rd
Blairsville GA 30512

Roswell Trade Center LLC
725 Upper Hembree Rd
Roswell GA 30076

Satya Magal
526 Blue Ridge Crossing
Evans GA 30809

Twin Towers Trading
5 Shaws Cove
Ste 203
New London CT 06320-